Good morning, Your Honor. May it please the Court, I have Nicola Kalski appearing for appellants. In this matter, summary judgment should not have been granted. There are material issues of fact that exist in this case, especially concerning the following. The calculation of employee's regular rate of overtime pay, which was not done. Overtime was not paid at the time and a half times the regular rate. Compensatory time is not paid out at time and a half, the regular rate. And supervising district attorney investigators are not exempt employees. Now, each pay period, the regular rate is supposed to be recalculated. And in this case, there's no evidence that it was. There was testimony by the PMK concerning documents, which were prepared in the course of litigation, were not held as business records, which show what payment structure was actually used to pay the deputy sheriffs and the members of the class. For the MOU in the gap time, all time that's overtime after 40 hours has to be paid at time and a half. The county defendants acknowledged this because they were paying and they admit they were paying MOU overtime. As far as the FLSA overtime, they did not pay it. The time after the 86th hour of work was not paid at the regular rate. It was still paid at the straight base hourly rate. What facts are in dispute exactly? The primary facts that are in dispute is the calculation of the overtime rate and whether or not the MOU. That sounds like a legal conclusion. It sounds like all the facts, everybody agrees what the facts are. You disagree with what to make of them. I'm not sure I understand what fact is in dispute. The facts in dispute is the actual calculation of time, the actual calculation of payment on payroll. For primary example, the excerpt of appellant's appendix at AA000794 shows that the documents that were relied on by the county and used by PMK Stevens were created during litigation. And looking at the excerpt that we have, page 3116 of the excerpt, shows that Tom Dominguez was paid 39 hours of overtime at the base hourly rate. There was no calculation of regular rate. Now, the document that the PMK and that the county relied on in their answer, in their rebuttal, is at AA001304, and that is the corresponding document to Exhibit 63-1. Exhibit 63-1, as mentioned in the excerpt, is the actual payroll certificate of Tom Dominguez. How much do you say he was paid? His hourly rate of pay, his base rate of pay is $44.67. He worked 26 hours of overtime. $44.62? Correct. Base pay. What do they say it is? His base pay? His base hourly rate, they say, is $44.67. So there's no factual dispute about what his base pay is? Correct. There's a factual dispute in the payment of overtime. It seems to me you disagree with the judge's legal conclusion, but I don't see where you've pointed to any facts that are in dispute. In the appellant's appendix, the excerpt of the appendix at AA001304, the first page shows what is supposed to be a breakdown of the actual gross pay of Tom Dominguez. It shows that he is paid his overtime at the base rate, $44.67. He's supposed to be paid at the regular rate. The second page shows... Well, that's a legal disagreement with the judge. They say yes. You say it's a different rate, but it's not a factual dispute. But it is a factual dispute because there's a test as to how he's paid. The document that they're relying on showing how the amount of money is paid shows what his gross pay is, is $6,756. And then using their calculations of how they said they were doing it shows that he was paid or should have been paid $6,231. And looking back at the actual payroll certificate, the document the county is relying on is omitting on-call pay and comp payoff. The comp time that's being paid is also being paid at base rate. When the comp time goes into the FLSA comp time bank for the Fair Labor Standards Act, that, when it's cashed out, is supposed to be paid at the regular rate of pay. It is, in fact, being paid at the base rate of pay. Well, but the district court found at page six was that plaintiffs have not presented any evidence that in any pay period, the county paid them less than what they were owed under the FLSA. Is that statement just wrong? Yes. Okay, what was your evidence? And the evidence is in these documents I'm referring to, where if you take the 39 hours of overtime pay, 39 hours of overtime pay is time and a half of the 26 hours of overtime worked. The first six hours are in the gap. The first six hours in the gap pursuant to the MOU are paid a time and a half. The next 20 hours are supposed to be paid a time and a half, the regular rate. That did not occur. The calculation that the county says is happening behind the scenes, the overtime adjustment, doesn't occur. Because if it did occur, or was supposed to occur, it would have occurred on this document that I'm talking about, where it says here that there's no overtime rate adjustment on the check. There should have been. If you look at the overtime rate of pay at $53 an hour, looking at the next page, it breaks down what the actual FLSA regular rate should have been. Either $53.30 an hour or $57.11 an hour. That's a range of either $9 to $13 more per hour that should have been paid in overtime. Multiply that by 30 overtime hours, and that is between $300 and $500 that should have been paid and wasn't. Instead, even if you use an offset for the gap, and you have gap overtime, that's three hours of overtime pay. Times the regular rate at $44, it's $132. Every one of these class members is missing money on pay period because they're not actually running these calculations. It says that they're doing no change for pay period, no overtime adjustment, but if they were actually running these calculations behind the scenes, the Fair Labor Standard Act's rate at $53 or $57 would be paying between $300 to $500 more per pay period, even adjusting for the gap that defendants are claiming that exists there. There is no time for rebuttal, or do you want to use it all up now? I'd like to reserve time for rebuttal. Good. Thank you very much. Gordy. Good morning, Nate. Please, the Court. Brian Walter appearing on behalf of defendants and appellees, County of Orange and related entities. I think the point here that the district court recognized and that the appellants and plaintiffs in the case are missing is the fact that in calculating the overtime rate of pay under the FLSA, the regular rate of pay, if you pay a bonus to employees for the regular hours that they work, and they work a lot of overtime hours, each additional overtime hour they work is necessarily going to drop their regular rate of pay a little bit lower because they're working additional hours where they're not getting that bonus anymore because the bonus is only paid on regular hours under the contract. We addressed this point in our brief, the Frank v. McQuig, Ninth Circuit case from 1991, specifically went into a lot of detail, I think, and really had the exact calculations in there of why this is the case legally. And I think that's the point that plaintiffs really dispute here is they don't agree with that, but the Frank v. McQuig is a clear statement of longstanding law since really the 1930, 1938 when the FLSA was enacted as to how the regular rate is calculated. And appellants and plaintiffs still have not, even as of today, been able to specifically articulate a pay period where any of the plaintiffs were not paid beyond what FLSA required of them. The way that the county pays the plaintiffs under the contract is going to automatically result in overpayments beyond what FLSA requires for each pay period. And much of what the plaintiffs are claiming is just sheer conjecture and speculation that they don't want to believe this is how the county's payroll system works. And I think as the court's already noted, they haven't been able to point to any specific fact to demonstrate the county's payroll system is not doing what the county says it's doing. And I think that's what the district court found. The point about — Is there an internal procedure for — it sounds like, at least at this oral argument, that they're saying that the county's saying one thing but doing something else. And is there sort of an internal mechanism for recalculating that and ensuring that that's not happening? Yes. The payroll worksheets that counsel referred to, and you have thousands of pages of them in the record, what those are is those are a printout of what the county's computer payroll system is doing. It's not — the plaintiff's counsel is correct when they say that is not done — that was done after the fact because the county's payroll system doesn't do that. It doesn't need to do the printout. It just does the — it's all electronic inside the computer system. And then what it does essentially is it compares the rate that the deputies are paid under the contract with the rate required by the FLSA. And the only time you will ever see — a deputy would ever see a rate adjustment on their paycheck is in the rare instance when the county's payroll system says the deputy's contract pay was not enough to cover all of the FLSA requirements. And the county presented extensive evidence that that's how this process works, and plaintiffs simply have no evidence to rebut that. The other plaintiffs also raised the issue of supervising district attorney investigators. We believe they waived that argument by not briefing that in their opening brief. And the same thing on the issue of compensatory time-off cash-outs. They haven't cited a single instance where a plaintiff had their compensatory time-off cashed out at the wrong rate, at a lower rate than what was legally required. And if the court has any questions, I'd be happy to answer them. Thank you. Thank you. That does it. Thank you. Mr. Krukowski. Thank you, Your Honor. What I heard the county say was that the more hours you work, the less you make. That's against the purpose of the Fair Labor Standard Act. That's our whole point. Somehow the system that's been contrived or argued in the case before the lower court somehow suggests that it's okay for the county to pay pursuant to the contract, but not pay according to the Fair Labor Standards Act, which results in less pay the longer the plaintiffs are working. You mean the more hours? The more hours they work, the less they make. You mean the less cash they get, or the less per hour? Less per hour. Well, the less cash is the same thing. The more they work, the less they make. That's what was said. There is no evidence of any internal procedure. When the deposition of the person most knowledgeable is taken, the documents, the 1,000 documents that were prepared during the course of the case by the county, the PMK couldn't describe it, and then there were objections made about attorney-client privilege when there was an effort to delve into how they were created or what they really mean. The rate that is due by the FLSA is the FLSA rate. The pages that I was discussing before show that that's either $53 an hour or $57 an hour, depending on some sort of modified rate conversion. The amount that's actually paid is only the base rate for every hour. And the example that I gave of Mr. Dominguez, he actually worked 26 hours of overtime. Six hours of that, you can argue, was in the gap and was MOU overtime. The other 20 hours are supposed to be paid at FLSA overtime at $53 an hour, time and a half. That extra $9 to $13 an hour exceeds the three overtime hours of pay. So even if you grant and concede the county's argument that they're entitled to an offset, there is still money lost on that pay period. That is pay period 14. That was July 2008. That's the evidence. That's the tribal issue of fact. And that is systemic through all the 900 people who have all been deprived at least between $100 to $500 per pay period. That's a harm. That's why we're here. And we ask that it be considered. Thank you. Thank you, gentlemen. The case just started. You can submit it. Good morning. 11-56916, Morey v. Louis Vuitton.
judges: Fletcher, Silverman, Wardlaw